UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **MID-GULF SHIPPING COMPANY, INC.** | § § § | |
| | § | **CIVIL ACTION NO.**   4:20-cv-3473 |
| **v.** | § § | |
| **QUINTILLION HOLDINGS, LLC, QUINTILLION SUBSEA OPERATIONS, LLC, AND ENERGY SUBSEA, LLC** | § § § | **JURY TRIAL DEMANDED** |

## COMPLAINT FOR DECLARATORY JUDGMENT AND DAMAGES

Plaintiff Mid-Gulf Shipping Company, Inc. files this Complaint for Declaratory Judgment and Damages against Defendants Quintillion Holdings, LLC, Quintillion Subsea Operations, LLC, and Energy Subsea, LLC and in support of its claims alleges upon information and belief as follows:

## PARTIES

1.     Plaintiff Mid-Gulf Shipping Company, Inc. ("Plaintiff" or "MGSCI") is a Louisiana corporation with its principal place of business located at 4760 Ponchartrain Drive, Slidell, Louisiana 70458.  MGSCI is a citizen of Louisiana for purposes of diversity jurisdiction.

2.     Defendant Quintillion Holdings, LLC ("Quintillion Holdings") is a limited liability company organized under the laws of Delaware with its principal place of business in Alaska. Quintillion Holding's sole member is QH Intermediate Holdco, LLC, a limited liability company organized under the laws of Delaware with its principal place of business in Alaska.  The members of QH Intermediate Holdco, LLC are believed to be citizens of Alaska.  Accordingly, Quintillion Holdings is a citizen of Alaska for diversity jurisdiction purposes.  Quintillion Holdings can be

served through its registered agent CT Corporation System at 9360 Glacier Hwy., Ste. 202, Juneau, AK 99801.

3.      Defendant Quintillion Subsea Operations, LLC ("Quintillion Subsea") is a limited liability company organized under the laws of Delaware with its principal place of business in Alaska.  Quintillion Subsea's sole member is Quintillion Subsea Holdings, LLC, a limited liability company organized under the laws of Delaware with its principal place of business in Alaska.  Quintillion Subsea Holdings, LLC's sole member is QSH Intermediate Holdco, LLC, a limited liability company organized under the laws of Delaware with its principal place of business in Alaska.  The members of QSH Intermediate Holdco, LLC are believed to be citizens of Alaska.  Accordingly, Quintillion Subsea is a citizen of Alaska for diversity jurisdiction purposes.  Quintillion Subsea can be served through its registered agent CT Corporation System at 9360 Glacier Hwy., Ste. 202, Juneau, AK 99801.

4.      Defendant Energy Subsea LLC ("ESS") is a limited liability company organized under the laws of Florida, with its principal place of business located at 1480 NE 129th Street, North Miami, Florida 33161.  ESS's sole member is Oddgeir Ingvartsen, a citizen of Norway whose last known address is in Florida.  Accordingly, ESS is either a citizen of Florida or a foreign citizen for purposes of diversity jurisdiction.  ESS can be served through its registered agent Eric Golomb, 2000 N.W. 150 Ave., Suite 2106, Pembroke Pines, FL 33028.

**JURISDICTION**

5.      Jurisdiction in this Court is proper pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00, exclusive of interest and costs, and there is complete diversity of citizenship as between Plaintiff and Defendants.

PD.29824892.5

6. Jurisdiction in this Court is also proper pursuant to 28 U.S.C. § 1333 because the claims in this matter relate to various maritime equipment, services, and port charges. To the extent the Court does not have maritime jurisdiction over all claims in this matter, the Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

7. Defendants Quintillion Holdings, Quintillion Subsea, and ESS are subject to this Court's personal jurisdiction as a result of their suit-related activities and contacts in Texas giving rise to MGSCI's claims in this action.

## VENUE

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) because a substantial part of the acts or omissions giving rise to MGSCI's claims took place in this District.

## INTRODUCTION

9. This case arises out of the fraudulent and illegal actions of Quintillion Holdings, Quintillion Subsea, and ESS (collectively, "Defendants") in Texas and beyond. As outlined in further detail below, Defendants have conspired together to obtain possession and control of certain property in derogation of MGSCI's legal rights. Indeed, the United States District Court for the Eastern District of Louisiana has already entered a final judgment against ESS finding that ESS converted certain of MGSCI's property which the Quintillion Defendants now claim to "own."

10. As part of their scheme, Defendants have conspired together to convert certain property owned by MGSCI and to engage in the fraudulent collateralization and "sale" of certain other equipment and component parts that MGSCI owned and/or upon which MGSCI performed services and repairs and for which MGSCI was not paid. Specifically, despite knowing that it did not possess clear title to the subject property, ESS purported to collateralize this property to

Quintillion Holdings and Quintillion Subsea (collectively, the "Quintillion Defendants") in order to secure a $2,000,000 loan from the Quintillion Defendants.  Subsequently, the Quintillion Defendants and ESS arranged for such property to be arrested/attached in Panama and then "sold" to the Quintillion Defendants to satisfy the "loan."  Through this complex scheme, and as detailed below, Defendants have caused substantial damages to MGSCI.

11.     Defendants also conspired together to benefit from MGSCI's incursion of certain operational and port charges related to the M/V Farland, plus equipment purchases, tooling purchases, repair services, and fuel purchases arranged and paid for by MGSCI at the direction and request of ESS, for which MGSCI was not repaid by Defendants.

12.     These are not isolated events, but rather are the latest chapters in the Defendants' ongoing pattern of fraudulent and illegal activity in the United States.

13.     Currently, the Quintillion Defendants' co-founder, Elizabeth Pierce, is serving a federal prison sentence for forging signatures on contracts worth more than $1 billion.  The Quintillion Defendants' unlawful "purchase" of property from ESS that is in fact owned by MGSCI and/or was serviced and repaired by MGSCI onboard the M/V Farland—despite knowing that ESS did not possess clear title to such property—is nothing more than a smaller-scale version of the Defendants' previous fraudulent practices, in which they engage in unlawful business transactions under false pretenses to the detriment of others.

14.     Similarly, ESS also has a history of allegedly fraudulent business practices.  As noted above, the United States District Court for the Eastern District of Louisiana has already entered a final judgment against ESS finding that ESS converted certain of MGSCI's property.  Additionally, ESS and its sole member, Mr. Oddgeir Ingvartsen, are currently being sued in the United States District Court for the Southern District of Alabama for fraud and deceptive practices

in a case captioned *Grupo HGM Tecnologias Submarinas S.A. v. Energy Subsea and Oddgeir Ingvartsen*, No. 1:18-cv-00430.  Therein, the plaintiff alleges that ESS and Mr. Ingvartsen defrauded it of over $1,250,000 through a series of false and fraudulent misrepresentations made by Mr. Ingvartsen regarding maritime-related work, the availability of vessels, ROV equipment, and mobilization.  In other words, ESS, just like the Quintillion Defendants, has a history of engaging in unlawful business transactions under false pretenses to the detriment of others.

15.     Together, and as further detailed below, Defendants have engaged in fraudulent and deceptive practices through which they have (i) converted and acquired wrongful possession of, and unjustly profited from, MGSCI's property, and (ii) received impermissible benefits, including the benefits of MGSCI's unpaid logistical services, repairs, tooling procurements, equipment procurements, and other charges incurred related to the M/V Farland.  Defendants' actions have caused MGSCI the loss of certain of its property and substantial monetary damages, including maritime-related port costs and expenses that MGSCI incurred to the benefit of Defendants.

## FACTUAL BACKGROUND

16.     MGSCI was established in 1966 by Captain Peder S. Toft to provide maritime logistics services to clients.  Today, MGSCI provides a wide range of specialized and integrated services to clients in the maritime and offshore oil and gas industries.

17.     MGSCI is the owner of certain movable marine property including remotely-operated vehicles ("ROVs") and related equipment, including component parts.

18.     ESS purports to be an operator of offshore vessels, equipment, and crew that provides offshore marine services.

19.     The Quintillion Defendants purport to be a telecommunications operator building submarine and terrestrial fiber optic cable networks in the U.S. Arctic.

20.     On August 1, 2015, MGSCI and ESS entered into a Master ROV Lease Agreement (the "Master Agreement").  Through the Master Agreement, MGSCI and ESS agreed, among other things, for MGSCI to lease ROVs and related marine equipment to ESS from time to time pursuant to certain terms and conditions.  The Master Agreement provides that the details for any particular lease are to be set forth in a separate ROV Charter Order, though any such leases will remain subject to the general terms and conditions of the Master Agreement.

21.     Under the terms and conditions of the Master Agreement, title to any ROV leased to ESS "shall at all times remain with" MGSCI, and ESS "shall keep the Leased ROV free and clear of all cargo, mechanics' and other liens, privileges and encumbrances of whatever nature."

22.     On August 1, 2015, MGSCI and ESS entered into an ROV Charter Order (the "Charter Order") for the lease of MGSCI's Mohawk 10 ROV system to ESS.

23.     Following execution of the Master Agreement and Charter Order, ESS took possession of  the Mohawk 10 ROV system from MGSCI on or about August 20, 2015.

24.     In addition to leasing the Mohawk 10 ROV system to ESS, MGSCI has also allowed ESS to store certain other marine equipment owned by MGSCI at ESS's facilities for deployment readiness purposes, including but not limited to:  (1) the Outland 163 ROV system; (2) the Outland 132 ROV system; and (3) the Searay ROV system.  These ROVs were delivered to ESS in 2018.  However, under no circumstances was this equipment to be utilized or moved by ESS without specific prior authority from MGSCI.

25.     Since October 2017, ESS has failed to make full payment for the rent and on-hire charges due for the Mohawk 10 ROV system, failed to return the Mohawk 10 ROV system to MGSCI, and also failed to return to MGSCI the Outland 163 ROV system, Outland 132 ROV system, Searay ROV system, or any of the other equipment that MGSCI allowed ESS to store at

its facilities.  It has also been recently discovered that ESS utilized the Outland 163 system and/or the Outland 132 system for multiple jobs without the knowledge or consent of MGSCI.

26.     On February 4, 2020, MGSCI filed suit against ESS for breach of contract and conversion in the U.S. District Court for the Eastern District of Louisiana in a case captioned *Mid-Gulf Shipping Company Inc. v. Energy Subsea, LLC*, No. 20-cv-00390, on the basis that ESS failed to: (i) make payments as required by the Master Agreement and Charter Order; and (ii) return MGSCI's property as described above.

27.     On July 13, 2020, the U.S. District Court for the Eastern District of Louisiana entered a final default judgment in favor of MGSCI and against ESS in the principal amount of $863,950.00.[1]  In doing so, the Court specifically found as follows:  "The ROV systems were Mid-Gulf Shipping's property.  Energy Subsea failed to return Mid-Gulf Shipping's property upon its demand and altered parts of the Mohawk 10 ROV, which is inconsistent with Mid-Gulf Shipping's right of ownership.  Energy Subsea also wrongfully interfered with Mid-Gulf Shipping's use of its property by representing to third parties that it was the owner of such property and collateralizing it without Mid-Gulf Shipping's approval."[2]  The Court further specified that MGSCI had incurred damages as a result of ESS's "conversion of Mid-Gulf Shipping's property, namely, the Outland 163 ROV system, Outland 132 ROV system, Searay ROV system, and Mohawk 10 ROV system."[3]

28.     In December 2019, the vessel M/V Farland was located at the port of Long Beach, California and offshore coastal California on time charter to ESS.  During this time period, MGSCI researched, purchased, and transported extensive tooling, spare parts, equipment, and consumables

---

[1] *See* Exhibit "1," July 13, 2020 Judgment.

[2] *See* Exhibit "2," July 13, 2020 Order & Reasons, pp. 10-11.

[3] *See id.*, p. 12.

to the M/V Farland as requested by ESS.  MGSCI also performed extensive services on various equipment in ESS's possession and onboard the M/V Farland, including but not limited to repair services and making arrangements for fabrication of parts, plus transportation, freight, and logistical services.  Although MGSCI and ESS agreed that ESS would pay for all such tooling, parts, equipment, consumables, services, and repairs, despite repeated written demands from MGSCI for payment, ESS failed to make the required payments to MGSCI.

29.     On or about December 29, 2019, ESS also refused to take any further responsibility for the operations of the M/V Farland.  As a result, the M/V Farland remained in port at anchorage in Long Beach.

30.     Thereafter, at the request of Defendants, MGSCI provided detailed cost and operational analyses for numerous scenarios to offload the ESS equipment onboard the M/V Farland at various ports and locations.  The analyses provided to Defendants by MGSCI specifically clarified the requirement of Defendants to make payment to MGSCI on the debts incurred by MGSCI for operational costs, logistical services, purchases, and repairs ordered by ESS respective to the M/V Farland and the equipment located onboard the M/V Farland, before any offloading of equipment could be arranged.

31.     At the request of ESS and the Quintillion Defendants, MGSCI also arranged for ESS and Quintillion representatives to be transported from shore out to the M/V Farland at anchorage on multiple occasions for the purposes of surveying the equipment onboard the M/V Farland, and finding a financial solution for the mounting debts owed by ESS to MGSCI and numerous other parties for port costs, equipment, services, and repairs to the equipment onboard the M/V Farland.

32.     On December 30, 2019, MGSCI sent ESS a final demand for payment of $329,000 for the costs it had incurred on ESS's behalf, and informed ESS that MGSCI could not provide further services to ESS until critical past due payments were made by ESS to MGSCI.  Later that same day, ESS acknowledged receipt of MGSCI's final demand and confirmed that it was "correct and approved."  Thereafter, MGSCI also advised the Quintillion Defendants of this debt and that the debt would have to be satisfied as part of any plan to offload or transfer the remaining equipment onboard the M/V Farland.

33.     After reportedly not being paid for vessel hire for an extended period of time, on or around January 14, 2020, the owners of the M/V Farland ordered that vessel to depart Long Beach, California in route to Norway via the Panama Canal.

34.     As described above, MGSCI provided tooling, parts, equipment, consumables, expertise, repair services, logistical services, and incurred additional costs and expenses regarding the M/V Farland, all directly benefiting the Defendants.  However, neither ESS nor the Quintillion Defendants have ever remunerated MGSCI for any of these items.  As neither ESS nor the Quintillion Defendants have ever remunerated MGSCI for the tooling, parts, and equipment that MGSCI bought, MGSCI contends that it was and remains the true owner of such property.

35.     On or around January 29, 2020, the Quintillion Defendants arrested/attached the equipment onboard the M/V Farland in Panama, purportedly in response to ESS's failure to make loan payments to the Quintillion Defendants under a promissory note.  During the Quintillion Defendants' arrest/attachment proceedings in Panama, MGSCI learned for the first time that assets owned by MGSCI had been posted as collateral months earlier in an agreement between Defendants, during the time that MGSCI was providing support and services to Defendants in

connection with the M/V Farland.  The full extent of Defendants' collateralization of MGSCI assets would only be fully learned months later.

36.     On or around February 5, 2020, and following the arrest/attachment in Panama, the Quintillion Defendants and ESS confected a fraudulent "bill of sale" whereby ESS purportedly "sold" certain property that had been onboard the M/V Farland to the Quintillion Defendants, including property owned by MGSCI and property that was the subject of MGSCI's services and repairs onboard the M/V Farland.  At all relevant times, the Defendants knew that ESS did not have clear title to at least some of the property being "sold" to the Quintillion Defendants and Defendants acted in bad faith and contrary to MGSCI's rights in that property.

37.     MGSCI has also recently learned that ESS dismantled certain property owned and controlled by MGSCI, and incorporated components from that property into other assets that the Quintillion Defendants allegedly acquired from ESS.  Again, the Defendants acted in bad faith and contrary to MGSCI's rights in that dismantled property.

38.     Since MGSCI has learned the full extent to which its property has been compromised by Defendants, MGSCI has requested inspection of the unlawfully collateralized and unlawfully "sold" equipment.  MGSCI's requests for inspection have been ignored by Defendants, however, and Defendants have actively hidden the location of MGSCI's property. With the limited information MGSCI has gained to date, it is very likely that most of MGSCI's property wrongfully possessed by Defendants has been dismantled and damaged beyond repair.

39.     At all relevant times, the Defendants knew that ESS did not have clear title to the property at issue and that MGSCI owned the property or had performed services and repairs on certain of the property.  The Quintillion Defendants have subsequently relied upon the purported collateralization and sale of this property to interfere with MGSCI's ability to obtain the return of

PD.29824892.5

its property and/or payment for the services and repairs MGSCI rendered for the benefit of the Defendants.

40.     On May 2, 2020, MGSCI arrested/attached in Panama the equipment that had been aboard the M/V Farland and previously arrested/attached by the Quintillion Defendants.   In response, the Quintillion Defendants asserted that they "owned" all such property and threatened MGSCI with various legal action if MGSCI did not release its arrest/attachment.   Following multiple communications between MGSCI and the Quintillion Defendants, the Quintillion Defendants promised to come to an agreement with MGSCI regarding the property at issue if MGSCI would release its arrest/attachment and allow the property to be transported to Houston, Texas.   Based on the Quintillion Defendants' representations, MGSCI agreed to release the equipment subject to its arrest/attachment in Panama so that the property could be moved to Houston, Texas.

41.     The Quintillion Defendants' promise to MGSCI that the parties would come to an agreement regarding the property at issue proved to be false.   Indeed, following the arrival of the property in Houston, Texas, the Quintillion Defendants have stonewalled MGSCI and refused to allow any inspection of the property or discuss in good faith a resolution to the present disputes. The Quintillion Defendants benefited from their misrepresentations to MGSCI because they induced MGSCI to release its rightful arrest/attachment of the property in Panama.   Stated otherwise, MGSCI relied to its detriment on the Quintillion Defendants' misrepresentations regarding the property at issue.

42.     Instead of coming to an agreement with MGSCI, Defendants arranged for the wrongly-collateralized and wrongly-sold property that was owned by MGSCI and/or subject of MGSCI's services and repairs onboard the M/V Farland to enter the United States through

- 11 -

Houston, Texas in May 2020.  Thus, Defendants specifically exercised unlawful possession, custody, and control over that property in Texas.  Upon information and belief, the Quintillion Defendants continue to maintain unlawful possession, custody, and control over the subject property in Texas.

43.     In addition to all of the above, and perhaps most egregiously, the collusion between ESS and the Quintillion Defendants has continued after the purported collateralization and "sale" of assets from ESS to the Quintillion Defendants.  Through investigation, MGSCI recently located parts of the Mohawk 10 ROV system at Bumi Subsea Asia Pte Ltd in Malaysia.  Bumi Subsea confirmed having possession of the Mohawk 10 ROV parts and that the Mohawk 10 ROV Parts had been recently retrieved by ESS.  Thereafter, on August 5, 2020, ESS representative Alte Haugvaldstad documented that the Quintillion Defendants are the "legal owner" of the Mohawk 10 ROV system and that the Quintillion Defendants know where the Mohawk 10 ROV system is located.[4]  As noted above, ESS has already been found by a federal court to have converted this piece of MGSCI equipment and in all likelihood the Quintillion Defendants "acquired" the Mohawk 10 ROV system from ESS, with full knowledge of MGSCI's ownership of this system.

44.     While Defendants have been in unlawful possession of the Mohawk 10 ROV system, MGSCI has received multiple inquiries from parties interested in purchasing the Mohawk 10 ROV system.  Of course, because Defendants have exercised unlawful control over this system, MGSCI cannot physically locate the Mohawk 10 ROV system, and thus, cannot agree to sell it. Stated otherwise, Defendants' unlawful actions have prevented MGSCI from lawfully selling the Mohawk 10 ROV system for profit.

---

[4] *See* Exhibit "3," August 5, 2020 E-mail from Atle Haugvaldstad to Eric Toft of MGSCI.

45.     Through these various actions and misrepresentations, Defendants have conspired to engage in a pattern of false, deceptive, and fraudulent behavior that has caused substantial damages to MGSCI.

### COUNT I – DECLARATORY JUDGMENT
### (AGAINST ALL DEFENDANTS)

46.     MGSCI hereby incorporates paragraphs 1 through 45 as if copied *in extenso*.

47.     MGSCI seeks relief under Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 in the form of a judgment declaring that the "sale" of the subject property from ESS to the Quintillion Defendants was invalid and ineffective, and declaring that MGSCI is entitled to the immediate return of its property (in full working order and condition) and to recover all damages to be proven at trial, including loss of use damages for the period during which Defendants have unlawfully possessed MGSCI's property and reimbursement for any of MGSCI's property that has been damaged beyond repair while in Defendants' possession.

48.     An actual, present, and existing dispute exists between MGSCI and Defendants with respect to ownership of, and interest in, the property at issue.  Specifically, MGSCI is the true owner of the Mohawk 10 ROV system and other assets that ESS purportedly "sold" to the Quintillion Defendants, and MGSCI further contends that it possesses an interest in certain other property "sold" to the Quintillion Defendants against which it incurred costs, whereas Defendants have taken actions in contradiction to MGSCI's rights.  As a result of the fraudulent "bill of sale" by and between the Defendants, the Quintillion Defendants currently claim to be the owners of certain property owned by MGSCI and/or property against which MGSCI has incurred costs.  Such justiciable controversy can only be resolved by a declaratory judgment.

49.     Accordingly, MGSCI is entitled to a judgment declaring that (i) any sale or transfer by and between the Defendants of any property owned by MGSCI (including the Mohawk

10 ROV system and any other MGSCI property that Defendants have unlawfully obtained) was invalid and unlawful; (ii) any sale or transfer by and between the Defendants of any property against which MGSCI incurred costs was invalid and unlawful; and (iii) MGSCI is entitled to the immediate return of its property (in full working order and condition) and to recover all damages to be proven at trial, including loss of use damages for the period during which Defendants have unlawfully possessed MGSCI's property and reimbursement for any of MGSCI's property that has been damaged beyond repair while in Defendants' possession.

### COUNT II – CONVERSION
### (AGAINST THE QUINTILLION DEFENDANTS)

50.     MGSCI hereby incorporates paragraphs 1 through 49 as if copied *in extenso*.

51.     ESS collateralized and/or purported to sell property owned by MGSCI and/or property against which MGSCI had incurred costs to the Quintillion Defendants, despite not possessing clear title to the property.

52.     Defendants knew that ESS did not possess clear title to this property at the time that ESS collateralized and/or later "sold" the property to the Quintillion Defendants.  Indeed, months before the purported "sale," Defendants knew that certain of the property at issue was either owned by MGSCI or was subject to extensive debt owed to MGSCI.

53.     Additionally, the Quintillion Defendants currently hold themselves out to be the "owners" of the Mohawk 10 ROV system, which, according to the final judgment of the U.S. District Court for the Eastern District of Louisiana, is owned by MGSCI and was converted by ESS before being acquired by the Quintillion Defendants.

54.     The Quintillion Defendants have wrongfully exercised dominion and control over property owned by MGSCI and other property against which MGSCI has incurred costs, in denial of or inconsistent with MGSCI's rights.

- 14 -

55.     The Quintillion Defendants' wrongful exercise of dominion and control over the above-outlined property occurred at least in part in Houston, Texas, where the property entered the United States after the Quintillion Defendants' arrest/attachment of the property in Panama.

56.     Accordingly, MGSCI is entitled to the return of its property (in full working order and condition) and to recover all damages to be proven at trial, including loss of use damages for the period during which Defendants have unlawfully possessed MGSCI's property and reimbursement for any of MGSCI's property that has been damaged beyond repair while in Defendants' possession.

**COUNT III – UNJUST ENRICHMENT**
**(AGAINST ALL DEFENDANTS)**

57.     MGSCI hereby incorporates paragraphs 1 through 56 as if copied *in extenso*.

58.     By "buying," acquiring possession of, and/or accepting as collateral from ESS property owned by MGSCI and/or property against which MGSCI incurred costs, the Quintillion Defendants wrongfully secured a benefit at the expense of MGSCI, which it would be unconscionable for the Quintillion Defendants to retain.  The Quintillion Defendants obtained that benefit through fraud and/or taking an undue advantage, because they knew that ESS did not possess clear title to the property at issue, but nevertheless purported to "buy," acquire possession of, and/or accept as collateral that property anyway.

59.     Furthermore, by obtaining the benefit of the extensive services and repairs performed by MGSCI on various equipment and component parts in ESS's possession and onboard the M/V Farland (property that the Quintillion Defendants subsequently "acquired" from ESS), including but not limited to procurement of parts, tooling, and consumables, arrangements for fabrication of parts and repair services, plus transportation, freight, and logistical services, the

Defendants wrongfully secured a benefit through fraud and/or taking an undue advantage at the expense of MGSCI, which it would be unconscionable for the Defendants to retain.

60.     Additionally, by obtaining the benefit of the port charges and expenses incurred by MGSCI related to the M/V Farland, the Defendants wrongfully secured a benefit through fraud and/or taking an undue advantage at the expense of MGSCI, which it would be unconscionable for the Defendants to retain.

61.     Finally, by misrepresenting to MGSCI their intention to recognize MGSCI's interests in the property that had been aboard the M/V Farland and that MGSCI arrested/attached in Panama, the Quintillion Defendants wrongfully secured a benefit at the expense of MGSCI, which it would be unconscionable for the Quintillion Defendants to retain.  The Quintillion Defendants obtained a benefit through fraud and/or taking an undue advantage of their misrepresentations to MGSCI to induce MGSCI to release the property MGSCI had arrested/attached in Panama in May 2020.

62.     Accordingly, MGSCI is entitled to recover all damages to be proven at trial associated with the unjust enrichment of the Defendants.

### COUNT IV – QUANTUM MERUIT
### (AGAINST ALL DEFENDANTS)

63.     MGSCI hereby incorporates paragraphs 1 through 62 as if copied *in extenso*.

64.     MGSCI rendered valuable services on behalf of the Defendants by incurring the costs and expenses related to the port charges against the M/V Farland, after ESS failed to pay the monies it owed.  The Defendants directly benefited from MGSCI's payment of those charges and expenses on behalf of ESS, which allowed Defendants access to and use of the M/V Farland.

65.     MGSCI also rendered valuable services on behalf of the Defendants through its rendition of extensive services on various equipment and component parts in ESS's possession

- 16 -

and onboard the M/V Farland (property that the Quintillion Defendants subsequently "acquired" from ESS), including but not limited to procurement of parts, tooling, and consumables, arrangements for fabrication of parts and repair services, plus transportation, freight, and logistical services.

66.     MGSCI has not been paid for any of the above valuable services rendered on behalf of the Defendants.

67.     Accordingly, MGSCI is entitled to recover all damages to be proven at trial associated with these benefits obtained by the Defendants.

**COUNT V – MONEY HAD AND RECEIVED**
**(AGAINST THE QUINTILLION DEFENDANTS)**

68.     MGSCI hereby incorporates paragraphs 1 through 67 as if copied *in extenso*.

69.     To the extent that the Quintillion Defendants have subsequently sold or otherwise received valuable consideration in exchange for any property owned by MGSCI or property against which MGSCI incurred costs that the Quintillion Defendants previously acquired from ESS, the Quintillion Defendants hold money which in equity and good conscience belongs to MGSCI.

70.     Accordingly, MGSCI is entitled to recover as damages any and all monies that the Quintillion Defendants received in exchange for any property owned by MGSCI or property against which MGSCI incurred costs that the Quintillion Defendants previously acquired from ESS and subsequently sold.

**COUNT VI – PROMISSORY ESTOPPEL / FRAUDULENT MISREPRESENTATION**
**(AGAINST THE QUINTILLION DEFENDANTS)**

71.     MGSCI hereby incorporates paragraphs 1 through 70 as if copied *in extenso*.

72.     After MGSCI rightfully arrested/attached the property that had been aboard the M/V Farland in Panama in May 2020, the Quintillion Defendants fraudulently misrepresented that they were the true owners of that property and promised MGSCI that they would come to an agreement with MGSCI regarding its interests in such property if MGSCI would allow the property to be moved to Houston, Texas.

73.     The Quintillion Defendants made these fraudulent misrepresentations and promise to MGSCI in order to induce MGSCI to release its rightful arrest/attachment of the property in Panama.  It was foreseeable by the Quintillion Defendants that MGSCI would rely on the Quintillion Defendants' fraudulent misrepresentations and promise—indeed, the Quintillion Defendants intended MGSCI to rely on them.

74.     MGSCI did in fact rely on the Quintillion Defendants' fraudulent misrepresentations and promise to MGSCI, as evidenced by the fact that MGSCI released its arrest/attachment of the property in Panama and allowed the Quintillion Defendants to move the property to Houston, Texas.

75.     MGSCI relied on the Quintillion Defendants' fraudulent misrepresentations and promise to its substantial detriment, because the Quintillion Defendants are not the true owners of the property at issue and because the Quintillion Defendants reneged on their promise to MGSCI to come to an agreement with MGSCI regarding the property at issue.  To date, MGSCI has been unable to recover from the Quintillion Defendants the property or any monetary remuneration for MGSCI's interests, which it could have recovered had it not released its arrest/attachment of the property in Panama in response to the Quintillion Defendants' fraudulent misrepresentations and promise.

76.     Accordingly, MGSCI is entitled to recover the damages it suffered related to its detrimental reliance on the Quintillion Defendants' fraudulent misrepresentations and promise regarding the property that MGSCI rightfully arrested/attached in Panama, including reimbursement for all costs related to MGSCI's rightful arrest/attachment of the property in Panama.

### COUNT VII – CIVIL CONSPIRACY
### (AGAINST ALL DEFENDANTS)

77.     MGSCI hereby incorporates paragraphs 1 through 76 as if copied *in extenso*.

78.     As described herein, Defendants are or were members of a combination of two or more persons.  The object of that combination was to accomplish an unlawful purpose or a lawful purpose by unlawful means, namely (i) to obtain improper possession and control of property owned by MGSCI and property against which MGSCI had incurred costs, including through fraudulent misrepresentations to MGSCI related to that property, (ii) to cause MGSCI to incur port charges and expenses related to the M/V Farland, to Defendants' benefit and MGSCI's detriment, and (iii) to cause MGSCI to incur costs related to services and repairs on the various equipment and component parts onboard the M/V Farland (property that the Quintillion Defendants subsequently "acquired" from ESS), to Defendants' benefit and MGSCI's detriment.

79.     Specifically, Defendants knew that ESS did not possess clear title to the property that it purported to collateralize and "sell" to the Quintillion Defendants because, as Defendants knew, MGSCI either owned that property or had performed services and repairs on some of that property for which it was not paid.  Defendants also knew that MGSCI was and is the true owner of the Mohawk 10 ROV system, which ESS converted and which the Quintillion Defendants now wrongly claim to own.  Defendants combined together to accomplish their unlawful action to wrongly pass title in this property, including the Mohawk 10 ROV system, from ESS to the

- 19 -

Quintillion Defendants.  Defendants also combined together to take undue advantage of and cause MGSCI to pay port charges and expenses related to the M/V Farland, and to cause MGSCI to incur costs related to services and repairs on the various equipment and component parts onboard the M/V Farland, all to Defendants' benefit and MGSCI's detriment.

80.     Defendants had a meeting of the minds on the object or course of action, including the participation in the conspiracy.  Defendants specifically agreed to transfer among themselves property that MGSCI either owned or against which it had incurred costs, despite knowing that such transfers were not lawful and that ESS did not possess clear title to the property.  Defendants also agreed not to repay MGSCI for the port charges and expenses it incurred related to the M/V Farland for Defendants' benefit, nor for the costs incurred by MGSCI related to services and repairs on the various equipment and component parts in ESS's possession and onboard the M/V Farland.

81.     One or more members of the conspiracy committed an unlawful, overt act to further the object or course of action of the conspiracy.  ESS has already been adjudged by a federal district court to have converted MGSCI's Mohawk 10 ROV system, which the Quintillion Defendants now claim to own.  Moreover, as outlined above, and in furtherance of the conspiracy, the Defendants have converted MGSCI's property, become unjustly enriched by their unlawful actions to MGSCI's detriment, and further committed various torts by unlawfully collateralizing and selling MGSCI's property and property against which it had incurred costs, by failing to compensate MGSCI for the various benefits it has conferred upon them, and by making fraudulent misrepresentations and promises to MGSCI related to the release of its rightful arrest/attachment of the property in Panama.

82.      As a direct and proximate cause of Defendants' wrongful conduct, MGSCI has suffered and will continue to suffer economic loss and the loss of its property, as well as loss of opportunities in the marketplace.

83.      As outlined above, Defendants' actions have been done intentionally and with conscious disregard for the law.

84.      Accordingly, MGSCI is entitled to recover all damages to be proven at trial as a result of Defendants' unlawful actions, and the Defendants are jointly liable for all damages caused by their conspiracy.

## CONDITIONS PRECEDENT

85.      All conditions precedent have been performed, have occurred, or have been waived.

## JURY TRIAL DEMAND

86.      Pursuant to Rule 38 of the Federal Rules of Civil Procedure, MGSCI demands a trial by jury on all issues so triable.

## PRAYER

WHEREFORE, Mid-Gulf Shipping Company, Inc. prays that after due proceedings are had there be judgment in its favor and against defendants Quintillion Holdings, LLC, Quintillion Subsea Operations, LLC, and Energy Subsea, LLC, as follows:

(a)      declaring that (i) any sale or transfer by and between the Defendants of any property owned by MGSCI (including the Mohawk 10 ROV system and any other MGSCI property that Defendants have unlawfully obtained) was invalid and unlawful; (ii) any sale or transfer by and between the Defendants of any property against which MGSCI incurred costs was invalid and unlawful; and (iii) MGSCI is entitled to the return of its property (in full working order and condition) and to recover all

- 21 -

damages to be proven at trial, including loss of use damages for the period during which Defendants have unlawfully possessed MGSCI's property and reimbursement for any of MGSCI's property that has been damaged beyond repair while in Defendants' possession;

(b)     ordering Defendants to immediately return all property owned by MGSCI to MGSCI (in full working order and condition);

(c)     awarding MGSCI all appropriate damages, including (i) loss of use damages for the period during which Defendants have unlawfully possessed MGSCI's property and reimbursement for any of MGSCI's property that has been damaged beyond repair while in Defendants' possession, (ii) reimbursement for all port charges and expenses MGSCI incurred related to the M/V Farland, (iii) reimbursement for all services and repairs on the various equipment and component parts in ESS's possession and onboard the M/V Farland (property that the Quintillion Defendants subsequently "acquired" from ESS), (iv) recovery of any and all monies that the Quintillion Defendants received in exchange for any property owned by MGSCI or property against which MGSCI incurred costs that the Quintillion Defendants previously acquired from ESS and subsequently sold, (v) damages related to MGSCI's detrimental reliance on the Quintillion Defendants' fraudulent misrepresentations and promise regarding the property that MGSCI rightfully arrested/attached in Panama, including reimbursement for all costs related to MGSCI's rightful arrest/attachment of the property in Panama, (vi) prejudgment interest; and (vii) the attorneys' fees and costs incurred in prosecuting this lawsuit;

PD.29824892.5

(d)     declaring that Defendants engaged in a civil conspiracy, such that they are jointly

        liable for all damages in this matter; and

(e)     awarding MGSCI all other legal and equitable relief deemed appropriate under the

        circumstances.


                            Respectfully submitted,


                            BY:  _/s/ Ivan M. Rodriguez_____
                                 Ivan M. Rodriguez
                                 Texas Bar No. 24058977
                                 Federal ID No. 4566982
                                 500 Dallas Street, Suite 1300
                                 Houston, Texas  77002
                                 Telephone: (713) 626-1386
                                 Telecopier: (713) 626-1388
                                 Email: ivan.rodriguez@phelps.com

                            **ATTORNEY-IN-CHARGE FOR PLAINTIFF,
                            MID-GULF SHIPPING COMPANY, INC.**


**OF COUNSEL:**
**PHELPS DUNBAR LLP**
Jeremy T. Grabill (*pro hac vice* admission to be requested)
Lindsay Calhoun (*pro hac vice* admission to be requested)
365 Canal St., Suite 2000
New Orleans, LA  70130
Telephone:  (504) 566-1311
Telecopier:  (504) 568-9130
Email:  jeremy.grabill@phelps.com
        lindsay.calhoun@phelps.com